## Mortgage Assets Mgt., LLC v DeGroat

2025 NY Slip Op 32200(U)

June 23, 2025

Supreme Court, Rockland County

Docket Number: Index No. 030157/2015

Judge: Larry J. Schwartz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

FILED: ROCKLAND COUNTY CLERK 06/24/2025 10:33 AM
NYSCEF DOC. NO. 216

INDEX NO. 030157/2015

RECEIVED NYSCEF: 06/24/2025

**To commence the 30-day statutory time period for appeals as of right (CPLR 5513[a]), you are advised to serve a copy of this order, with notice of entry, upon all parties.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

---------------------------------------------------------------------------X

MORTGAGE ASSETS MANAGEMENT, LLC,

                                        Plaintiff,

          -against-

STEPHEN F. DEGROAT, ROCKLAND COUNTY
COMMISSIONER OF FINANCE, AS
ADMINISTRATOR FOR THE ESTATE OF
JOAN MILLER a/k/a JOAN F. MILLER;
ADAM MILLER, JR. as heir and distribute of
the Estate of Joan Miller, a/k/a Joan F. Miller and
Wendy Miller; JOAN T. NELSON, as heir and
Distribute of the Estate of Joan Miller, a/k/a Joan
F. Miller and Wendy Miller; JULIA SPRINGMAN,
as heir and distribute of the Estate of Joan Miller
a/k/a Joan F. Miller and Wendy Miller, if living, and
if she/he be dead, any and all persons unknown to
plaintiff claiming or who may claim to have an interest
in, or general or specific lien upon the real property
described in this action; such unknown persons being
herein generally described and intended to be included
in the following designation, namely: the wife, widow,
husband, widower, heirs at law, next of kin, descendants,
executors, administrators, devisees, legatees, creditors,
trustees, committees, lienors and assignees of such
deceased, any and all persons deriving interest in or
lien upon, or title to said real property by, through or
under them, or either of them, and their respective wives,
widows, husbands, widowers, heirs at law, next of kin,
descendants, executors, administrators, devisees, legatees,
creditors, trustees, committees, lienors and assigns, all
of whom and whose names, except as stated, are unknown
to plaintiff; UNKNOWN HEIRS AND DISTRIBUTEES
TO THE ESTATE OF JOAN MILLER a/k/a JOAN F.
MILLER, any and all persons unknown to plaintiff, claiming,

**DECISION AND ORDER**
Index No.: 030157/2015

Mot. Seq. No. 006

[* 1]

or who may claim to have an interest in, or general or specific lien upon the real property described in this action; such unknown persons being herein generally described and intended to be included in the following designation, namely: the wife, widow, husband, widower, heirs at law, next of kin, descendants, executors, administrators, devisees, legatees, creditors, trustees, committees, lienors and assigns, all of whom and whose names, except as stated, are unknown to plaintiff; UNKNOWN HEIRS AND DISTRIBUTEES OF WENDY MILLER, AS HEIR AND DISTRIBUTEE TO JOAN MILLER A/K/A JOAN F MILLER, any and all persons unknown to plaintiff, claiming, or who may claim to have an interest in, or general or specific lien upon the real property described in this action; such unknown persons being herein generally described and intended to be included in the following designation, namely: the wife, widow, husband, widower, heirs at law, next of kin, descendants, executors, administrators, devisees, legatees, creditors, trustees, committees, lienors, and assignees of such deceased, any and all persons deriving interest in or lien upon, or title to said real property by, through or under them, or either of them, and their respective wives, widows, husbands, widowers, heirs at law, next of kin, descendants, executors, administrators, devisees, legatees, creditors, trustees, committees, lienors and assigns, all of whom and whose names, except as stated, are unknown to plaintiff; DELTA FUNDING CORPORATION; UNITED STATES OF AMERICA O/B/O SECRETARY OF HOUSING AND URBAN DEVELOPMENT, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; UNITED STATES OF AMERICA; THE PEOPLE OF THE STATE OF NEW YORK,

"JOHN DOES" and "JANE DOES", said names being fictitious, parties intended being possible tenants or occupants of premises and corporations, other entities or persons who have, claim, or may claim, a lien against, or other interest in the premises,

Defendants,

-and-

[* 2]

JASON SPRINGMAN,

Defendant-Intervenor.

------------------------------------------------------------------------------X

SCHWARTZ, J.

The papers filed electronically via NYSCEF numbered 173-214 were read and considered on Plaintiff's motion (a) for summary judgment pursuant to CPLR §3212 against intervenor, JASON SPRINGMAN, (b) for appointment of a Referee, (c) for default judgment against the non-appearing and non-answering Defendants pursuant to CPLR §3215; and other related relief. Upon such reading and consideration, the motions are disposed as follows:

**BACKGROUND**

This is an action to foreclose a Home Equity Conversion Mortgage ("HECM"), or a "reverse mortgage" (the "Mortgage"), that secures a Home Equity Conversion Adjustable-Rate Note (the "Note") executed by Joan Miller ("Decedent"). On June 23, 2000, the Decedent obtained the Mortgage from BNY Mortgage Company, LLC ("BNY"). The Mortgage constitutes a lien on the property located at 2 Hester Place, Garnerville, NY (the "Property"). The Note and Mortgage were then assigned to Alliance Mortgage Co. ("Alliance") by assignment of mortgage dated June 23, 2000. On or about February 2, 2004, Alliance changed its name to Everhome Mortgage Company, which converted to a limited liability company and merged with Everhome Mortgage Trust ("Trust"), wherein Everbank was the trustee. According to the complaint, the Decedent failed to maintain taxes on the subject property in 2013, resulting in a default under the terms and conditions of the Loan Documents. Everbank commenced this foreclosure action by filing a Notice of Pendency and Summons and Complaint on January 14, 2015. The Decedent filed an answer in response to the complaint on March 3, 2015.

Decedent Joan Miller died on October 6, 2015, resulting in the action being stayed. Limited Letters of Administration were issued to Stephen F. DeGroat, as the commissioner of Finance ("DeGroat") who was then substituted into this action along with Decedent's known heirs, Wendy Miller ("Wendy") and Adam Miller Jr. in place of Decedent as defendants. Wendy passed away on October 21, 2021. On August 11, 2022, a notice of appearance was filed on behalf of then non-party, Jason Springman ("Springman"). A year later, Springman filed a motion to intervene on the grounds that he was an occupant of the Property, and said motion was granted by order entered on December 20, 2023. Springman filed a timely answer with one affirmative defense – lack of

standing. No other defendants have answered the complaint. The parties subsequently engaged in discovery.

On December 20, 2024, Plaintiff filed the instant motion, inter alia (1) for summary judgment against Springman pursuant to CPLR §3212, (2) for an order of reference; and (3) for default judgment against non-appearing and non-answering defendants pursuant to CPLR §3215. Springman has submitted opposition to Plaintiff's motion and requests the Court grant summary judgment to Springman without the necessity of a cross-motion pursuant to CPLR §3212(b).

ANALYSIS

CPLR §3212(b) provides that a motion for summary judgment "shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party" such that there are no triable issues of fact (CPLR §3212(b); *Zuckerman v City of New York, et al* 49 NY2d 557 [1980]; *Roos v King Construction*, 179 AD3d 857, 859 [2d Dept 2020]). The Court is required to view the evidence "in the light most favorable to the nonmoving party, and all reasonable inferences must be resolved in favor of the nonmoving party" (*Santiago v Joyce*, 127 AD3d 954 [2nd Dept 2015] *citing Green v Quincy Amusements, Inc*, 108 AD3d 591, 592 [2d Dept 2013]; *Pearson v Dix McBride, LLC*, 63 AD3d 895 [2d Dept 2009]). Plaintiff contends that it has established its prima facie entitlement to summary judgment by submitting the Note, the Mortgage, and evidence of Decedent's default by the Affidavit of Talya Lopez, Contract Management Coordinator for PHH Mortgage Corporation ("Lopez Affidavit"), which states that there was a default under the terms of the Note and Mortgage upon the Decedent failing to maintain taxes on the Property.

Springman argues that Plaintiff has failed to prove the standing of the original Plaintiff, Everbank, to prosecute the instant foreclosure action. Specifically, Springman argues that Plaintiff cannot prove Everbank's standing to commence this action because of its inability to prove a principal-agent relationship between Wendover (the entity to whom the assignment of the mortgage and note was actually delivered) and Everbank's predecessor-in-interest, Alliance. Because the allonge and Note are both lost, Plaintiff must prove its standing by showing that the Note was assigned to Alliance Mortgage Company because a plaintiff can establish its standing as either the holder or the assignee of the note (*Aurora Loan Services, LLC v Mercius*, 138 AD3d 650 [2d Dept 2016]).

[* 4]

"Where, as here, the issue of standing is raised by a defendant, a plaintiff must prove its standing in order to be entitled to relief" (*Bank of NY v Silverberg*, 86 AD3d 274, 279 [2d Dept 2011]; *see Wells Fargo Bank Minn, NA v Mastropaolo*, 42 A.D.3d 239, 242 [2d Dept 2007]). A plaintiff may demonstrate that it is the holder or assignee of the underlying note "by showing either a written assignment of the underlying note or the physical delivery of the note" (*US Bank NA v Guy*, 125 AD3d 845, 846–847 [2d Dept 2015]).

While the complaint asserts that Everbank was in physical possession and control of the original note and mortgage, Plaintiff now argues that it "does not seek to demonstrate Everbank's standing to commence this action as holder of the Note, but as assignee and/or owner of the loan rendering the fact that the Note is lost and that only a copy of the allonge was available at the time this action was commenced academic" (Doc. 204 ¶ 23). Plaintiff produced an assignment of mortgage dated June 23, 2000 purportedly assigning the Note and Mortgage to Alliance c/o Wendover, a mortgage servicer with an office in Ohio (Doc. 178). Springman argues the assignment is defective because it was delivered to Wendover, not Alliance and Plaintiff is unable to prove an agency relationship between the two.

Here, the Court finds that the Plaintiff fails to demonstrate its prima facie entitlement to judgment as a matter of law because it does not establish that Everbank had standing as the lawful holder or assignee of the subject note on the date it commenced this action (*see Deutsche Bank Natl Trust Co v Barnett*, 88 AD3d 636 [2d Dept 2011]; *US Bank NA v Madero*, 80 AD3d 751 [2d Dept 2011]; *US Bank, NA v Collymore*, 68 AD3d 752 [2d Dept 2009]). Plaintiff admits to having no document or record in its custody evidencing a principal-agent relationship between Alliance and Wendover and without such relationship, Wendover was without authority to accept the assignment from BNY on behalf of Alliance.

Notwithstanding, a review of the assignment does indicate the assignor as "Alliance c/o Wendover," and Wendover is described as a mortgage servicer. Although Springman requests that this Court search the record and grant him an award of summary judgment on the fact that the assignment appears to have been delivered directly to Wendover, the Court finds that this fact is insufficient, as a matter of law, to rebut the presumption that the recorded assignment from BNY to Alliance is valid. Therefore, the Court concludes that questions of fact remain, thereby precluding the Court from granting summary judgment to Springman on the record before it.

[* 5]

Additionally, Springman maintains that the BNY assignment is invalid because it fails to sufficiently identify the Note which is a non-negotiable instrument. Here, the instrument is a reverse mortgage, which creates a security interest, and therefore, Article 9 of the UCC governs how Plaintiff must establish its right to foreclose the Mortgage. UCC §9-203(b) outlines the criteria for when a security interest is enforceable. Springman posits that Plaintiff cannot satisfy the requirements of UCC § 9-203(b), and therefore, it cannot enforce the Note.

Article 9 of the UCC, which governs secured transactions including the sale of promissory notes, provides the requirements for establishing standing to enforce a non-negotiable instrument (*See* UCC §9-109[a][3]). Specifically, UCC §9-203(b) provides for the enforceability of security interests, as it states:

> Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>
> (1)     value has been given;
> (2)     the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
> (3)     one of the following conditions is met:
>
> (A)     the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;
> (B)     the collateral is not a certificated security and is in the possession of the secured party under Section 9- 313 pursuant to the debtor's security agreement;
> (C)     the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under Section 8-301 pursuant to the debtor's security agreement; or
> (D)     the collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights, or electronic documents, and the secured party has control under Section 7-106, 9-104, 9-105, 9-106, or 9-107 pursuant to the debtor's security agreement.

In other words, Plaintiff can only enforce its interest in the Note if (1) value has been given, (2) the seller of the Note had rights in the Note or the power to transfer rights in the Note to Plaintiff; *and* one of four conditions are met: (a) the seller of the Note has authenticated an agreement for the sale of promissory notes that include the Note, and the agreement provides a description of the Note; (b) the Note, if not a certificated security, is in Plaintiff's possession under

[* 6]

UCC §9-313 pursuant to the security agreement; (c) the Note, if a certificated security, is in registered form and has been delivered to the Plaintiff under UCC §8-301 pursuant to the security agreement; and (d) the Note is a deposit account, electronic chattel paper, investment property, letter-of-credit rights, or electronic documents, and Plaintiff has control over the Note under UCC §§7-106, 9-104, 9-105, 9-106, or 9-107 pursuant to the security agreement UCC §9-203(b).

Springman contends that Plaintiff fails to satisfy any of the four conditions under UCC §9-203(b)(3), and therefore has not established its right to enforce an interest in the Note, or its standing to commence this action. Springman argues the BNY Assignment does not comply with 9-203(b)(3)(A) because it fails to adequately describe the Note which does not specify a sum certain, and the Mortgage specifies that it secures "the repayment of the debt …up to a maximum principal amount of $155,000.00" (NSYCEF Doc. No. 177 at 3). However, the Assignment purports to assign a mortgage in the principal sum of $155,000.00 together with the Note, thereby creating a triable issue of fact as to whether the BNY Assignment sufficiently describes the Note in compliance with UCC §9-203(b)(3).

None of the other provisions of UCC § 9-203(b)(3) apply. UCC §9-203(b)(3)(B) would only apply if the Note is not a certificated security and is in Plaintiff s possession under UCC § 9-313, which applies to "tangible negotiable documents, goods, instruments, money, or tangible chattel paper," pursuant to a security agreement. The Note does not fall under one of the security interests included in UCC § 9-313, and both UCC § 9-203(b)(3)(C) and (D) apply to instruments other than promissory notes (*Bank of New York Mellon Trust Co v Hendrickson,* 79 Misc3d 540 [Sup Ct Rockland County 2023]).

Plaintiff contrarily argues that the Assignment satisfies UCC §9-203(b)(3)(A) and that it has satisfied the requirements for standing to enforce the Note because it has met the requirements to enforce a negotiable instrument. The Court does not agree. What is at issue here is a non-negotiable instrument and UCC Article 9 governs. UCC § 9-203(b) provides the applicable standard to establish standing to enforce a nonnegotiable instrument such as the Note. Here, Springman correctly contends that the Plaintiff has failed to meet its prima facie burden of demonstrating that the Assignment satisfies the requirements of UCC §9-203(b)(3)(A).

Accordingly, based on the foregoing, it is hereby

***ORDERED*** that Plaintiff's motion for summary judgment is denied; and it is further

[* 7]

**ORDERED** that Defendant-Intervenor Springman's request for an award of summary judgment granted in his favor is denied; and it is further

**ORDERED** that the parties are directed to appear before the undersigned on *July 23, 2025 at 9:30 A.M.* for the purpose of scheduling a framed-issue hearing to determine whether the subject Note and Mortgage was validly assigned to Alliance so as to establish Everbank's standing to commence this action.

The Clerk of the Court is respectfully directed to terminate Motion Sequence No. 006 (*Denied; Hearing Ordered*).

This shall constitute the Decision and Order of this Court.

Dated: New City, New York
June 23, 2025

_____
HON. LARRY J. SCHWARTZ, J.S.C.

[* 8]